

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
06/12/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 12-31850** |
| **DANIEL CLARK IV** | § | **CHAPTER 7** |
| | § | |
| Debtor(s). | § | **DAVID R. JONES** |

**MEMORANDUM OPINION**
**(Docket Nos. 124, 127 and 139)**

In this contested matter, Alisha Pate and Yvonne Clark-Thigpen ask the Court to reconsider and vacate its prior order denying priority status for Ms. Pate's and Ms. Clark-Thigpen's claims under 11 U.S.C. § 726(a)(1) and instead, allowing their claims as unsecured claims entitled to distribution under 11 U.S.C. § 726(a)(3). In order to resolve the motion, the Court must answer a question of apparent first impression—Is the deadline set forth in 11 U.S.C. § 726(a)(1)(A) merely the date on which a discrete administrative event occurs or does it embody a due process element that requires actual notice to affected creditors?

## Background

After a standout career at the University of Illinois, Daniel Clark was selected by the Jacksonville Jaguars in the seventh round of the 2000 NFL draft. Mr. Clark went on to play 11 seasons in the NFL for the Jaguars, the Oakland Raiders, the New Orleans Saints, the New York Giants and the Houston Texans. During those years, Mr. Clark lived the good life, starting a number of businesses and acquiring a variety of toys, including a 56-foot boat named the "Wet Dream." Mr. Clark appeared in television episodes of "My Super Sweet 16" and "The Game." Mr. Clark also found time to father at least five children with five different women. Alisha Pate and Yvonne Clark-Thigpen are two of those women.

Unfortunately, the good times didn't last. After being released by the New Orleans Saints in 2011, Mr. Clark filed a voluntary chapter 7 case on March 6, 2012 [Docket No. 1].

In his Schedule E, Mr. Clark listed Ms. Pate as the holder of an unsecured priority claim in the amount of $54,000.00 for child support arrearages [Docket No. 20]. Ms. Pate's address is listed as 419 Stony Island, Calumet City, Illinois [Docket No. 20]. Ms. Pate testified that at all relevant times, her correct address was 41**7** Stony Island and that she did not receive any of the notices provided in this case (emphasis added) (Transcript 3/4/15, pg. 101, ln. 10-14).

Ms. Clark-Thigpen is not listed in any of the Mr. Clark's schedules [Docket Nos. 16-25]. Instead, Mr. Clark listed the Illinois Department of Healthcare Child Support Enforcement[1] (the

---

[1] Both Ms. Pate and Ms. Clark-Thigpen reside in Illinois and have sought the enforcement of unsatisfied child support orders through the State of Illinois.

"State") as a creditor for delinquent child support payments totaling $221,493.00 [Docket No. 20]. Both Ms. Pate and Ms. Clark-Thigpen are listed in Mr. Clark's statement of financial affairs, under question 3a, as creditors receiving payments within 90 days of the petition date [Docket No. 26].

The case was initially closed without a discharge being entered on June 22, 2012 due to Mr. Clark's failure to file a financial management course completion certificate [Docket No. 41]. The State received notice of the closure [Docket No. 42].

On July 12, 2012, the chapter 7 trustee filed a motion to reopen the case citing as a basis that (i) Mr. Clark had actually taken the required financial management course; and (ii) the estate would receive approximately $127,500 from the NFL Player Severance Pay Plan (the "Severance Pay") that could be administered for the benefit of creditors [Docket No. 44]. The Court granted the motion by order entered August 8, 2012 [Docket No. 45]. The State received both a copy of the motion and the order reopening the case [Docket Nos. 44 and 47].

The chapter 7 trustee issued a "Notice of Assets, Notice to Creditors and Other Parties in Interest of the Need to File Claims" on October 26, 2012 [Docket No. 55]. The State received a copy of the notice [Docket No. 56]. The notice provides that creditors are required to file claims no later than January 24, 2013 in order to be eligible to receive a distribution of the bankruptcy estate's assets [Docket No. 55].

On June 12, 2013, the Debtor amended his list of creditors to reflect Ms. Pate's mailing address as 41**7** Stony Island, Calumet City, IL 60409 (emphasis added) [Docket No. 75].

Mr. Clark initially challenged the chapter 7 trustee's claim to the Severance Pay [Docket No. 48]. On July 8, 2013, however, the Court approved an agreed order directing that the Severance Pay be delivered to the chapter 7 trustee [Docket No. 81].

Mr. Clark received his discharge on October 21, 2013 [Docket No. 98].

After completing his administration of the case, the chapter 7 trustee filed his (i) "Final Report before Distribution" (the "TFR") [Docket No. 108]; and (ii) "Notice of Final Report before Distribution" (the "TFR Notice") on July 17, 2014 [Docket No. 110]. The State received a copy of the TFR Notice [Docket No. 112].

The only objection filed to the TFR was filed by Chasity Clark on August 7, 2014 along with a request to allow a late-filed proof of claim [Docket Nos. 114 and 115]. The Court scheduled a hearing on both matters for September 23, 2014 [Docket Nos. 118 and 121]. On October 10, 2014, the Court issued its decision on Chasity Clark's request to allow her late-filed proof of claim [Docket Nos. 128 and 129; *see also* fn. 3]. The Court did not issue a ruling on the chapter 7 trustee's TFR due to other pending claim objections.

On August 15, 2014, the Illinois Department of Healthcare and Family Services (collectively with the State hereafter referred to as "IHFS") filed a proof of claim for "child support arrears owed through IHFS for Yvonne Clark-Thigpen" in the amount of $242,550.31

[Claims Docket No. 12].  The proof of claim (i) is dated August 12, 2014; (ii) identifies IHFS as the creditor; and (iii) is signed by Christine Schmidt as "[a]gent for Creditor" [Claims Docket No. 12].

On August 15, 2014, IHFS also filed a proof of claim for "child support arrears owed through IHFS for Alisha Pate" in the amount of $58,257.39 [Claims Docket No. 13].  The proof of claim (i) is dated August 12, 2014; (ii) identifies IHFS as the creditor; and (iii) is signed by Christine Schmidt as "[a]gent for Creditor."

The chapter 7 trustee filed his objection to the two proofs of claim on August 20, 2014 asserting that the claims should be disallowed as tardy under 11 U.S.C. § 726(a)(1) [Docket No. 120].  The objection was calendared for a hearing on September 24, 2014 at 10:00 a.m. [Docket No. 120].  IHFS failed to file a response to the chapter 7 trustee's objections.

On September 23, 2014 at 10:00 a.m., the Court conducted a hearing on another matter in this case.  When the Court requested the parties to make their appearances, Christine Schmidt appeared by telephone on behalf Ms. Pate and Ms. Clark-Thigpen.  Ms. Schmidt did not inform the Court that she was not an attorney.  The Court instructed Ms. Schmidt that her hearing was the next day at 10:00 a.m.

On September 24, 2014 at 10:00 a.m., the Court conducted a hearing on the chapter 7 trustee's objection to the claims filed by IHFS.  Both Ms. Pate and Ms. Clark-Thigpen appeared by telephone.  Ms. Schmidt failed to appear or otherwise participate in the hearing.  After considering the evidence and arguments advanced by the chapter 7 trustee, the Court sustained the chapter 7 trustee's objections in part.  In its order entered September 24, 2014, the Court held that the claims would be allowed the amounts filed and entitled to distribution under 11 U.S.C. § 726(a)(3)[2] [Docket No. 124].

After retaining a seasoned bankruptcy practitioner, Ms. Pate and Ms. Clark-Thigpen filed a motion on October 8, 2014 to vacate the Court's September 24, 2014 Order [Docket No. 127].  In the motion, Ms. Pate and Ms. Clark-Thigpen assert that service of the TFR Notice was ineffective on them and that the Court erred in denying their claims priority distribution status under 11 U.S.C. § 726(a)(1) .

The Court scheduled a hearing on the motion for December 9, 2014 [Docket No. 132].  The Court set a deadline of December 4, 2014 for responses [Docket No. 132].   The chapter 7 trustee filed his response on November 17, 2014 [Docket No. 134].  The debtor filed his response on December 8, 2014 [Docket No. 138].

On November 18, 2014, Ms. Pate and Ms. Clark-Thigpen filed their emergency motion seeking (i) a continuance of the December 9, 2014 hearing; (ii) authority to conduct a telephonic deposition; and (iii) permission for Christine Schmidt to testify by telephone [Docket No. 135].  By order entered November 19, 2014, the Court (i) granted the request for a continuance; (ii)

---

[2]   The Court's reasoning regarding the application of 11 U.S.C. § 726(a)(3) was set forth in a decision rendered in the same case on a claim asserted by a similarly situated creditor.  *See In re Clark*, No. 12-31850, 2014 WL 5100111 (Bankr. S.D. Tex. Oct. 10, 2014).

noted that permission was not required for a telephonic deposition; and (iii) denied the request to allow Ms. Schmidt's testimony by telephone [Docket No. 136].   A continued hearing was scheduled for January 28, 2015 at 9:00 a.m. [Docket No. 136].

On December 18, 2014 Alisha Pate filed a document entitled, "Alisha Pate's Adoption of Proof of Claim #13 Filed By Illinois Dept. of Healthcare and Family Services" [Claims Docket No. 14-1].  In the document, Ms. Pate states that

[o]n August 15, 2014, the Illinois Dept. of Healthcare and Family Services ("IDHFS"), on my behalf, at my specific request and insistence, filed a proof of claim for a sum of $58,257.39 (Claim #13) as a priority domestic support obligation under 11 U.S.C. § 507(a)(1)(A).

. . .

I hereby fully adopt Claim #13 as my own separate act and deed. . . .

[Claims Docket No. 14-1].  Ms. Pate amended the document on January 21, 2015 to add her correct mailing address and to set forth the fact that she had assigned a 33% contingency fee interest in the claim to her attorney [Claims Docket No. 14-2].  Identical pleadings were also filed on behalf of Ms. Clark-Thigpen except that the amount of the claim asserted was $242,550.31 [Claims Docket Nos. 15-1 and 15-2].

On January 6, 2015, Ms. Pate and Ms. Clark-Thigpen filed their "Amended Motion to: (1) Reconsider and Vacate Order Stripping Claim #12 and #13 of § 726(a)(1) Distribution Status; and (2) Declare that Claim #12 and #13 have § 726(a)(1) Distribution Status" [Docket No. 139]. The chapter 7 trustee filed his amended response on January 7, 2015 [Docket No. 140].

On January 7, 2015, Ms. Pate and Ms. Clark-Thigpen filed their second emergency motion seeking (i) authority to conduct a telephonic deposition of Christine Schmidt; (ii) a determination that the deposition transcript would be admitted at the January 28, 2015 hearing and (iii) a status conference [Docket No. 141].  By order entered January 12, 2015, the Court (i) authorized Ms. Pate and Ms. Clark-Thigpen to take the telephonic depositions of a designated representative of the IHFS and Ms. Christine Schmidt so long as the depositions were properly noticed in accordance with the Federal Rules; (ii) declined to make a determination of whether the potential witnesses were unavailable to testify for purposes of Rule 804 until they were called at trial and a proper objection was raised; and (iii) required Ms. Christine Schmidt, individually, to appear before this Court at the January 28, 2015 hearing to explain her conduct [Docket No. 149]. As an accommodation to the parties, the Court continued the January 28, 2015 hearing to March 4, 2015 [Docket No. 149].

On February 3, 2015, the Texas Attorney General entered an appearance on behalf of IHFS [Docket No. 159].  On February 10, 2015, the Texas Attorney General requested a continuance of the March 4, 2015 hearing based on the alleged lack of funding for travel by State of Illinois employees [Docket No. 165].  The Court denied the motion the same day [Docket No. 166].

The Court commenced an evidentiary hearing on the motion to vacate on March 4, 2015. The Court heard testimony from Ms. Yvonne Clark-Thigpen, Ms. Alisha Pate, Ms. Christine Schmidt and the chapter 7 trustee. In addition, the Court admitted approximately 34 exhibits offered by the parties and to which no objections were made.

**Ms. Yvonne Clark-Thigpen**

Ms. Clark-Thigpen testified that she first learned of Mr. Clark's bankruptcy case on August 4, 2014 (Transcript 3/4/15, pg. 55, ln. 7). Upon learning of the bankruptcy, Ms. Clark-Thigpen stated that she immediately contacted IHFS to advise them of the bankruptcy (Transcript 3/4/15, pg. 58, ln. 22–pg. 59, ln. 4). After speaking with the chapter 7 trustee, Ms. Clark-Thigpen testified that she again called IHFS and was told that someone would call her back (Transcript 3/4/15, pg. 62, ln. 16-20). At approximately 5:00 p.m. that day, Ms. Clark-Thigpen received a phone call from Christine Schmidt who told her that (i) IHFS had no prior notice of Mr. Clark's bankruptcy filing; (ii) she would contact the chapter 7 trustee and that Ms. Clark-Thigpen "would not have to worry about anything else; and (iii) she [Schmidt] would take it from there" (Transcript 3/4/15, pg. 63, ln. 6-8). Ms. Clark-Thigpen testified further that Ms. Schmidt told her that she would file a proof of claim on her behalf (Transcript 3/4/15, pg. 64, ln. 2-6). The proof of claim was subsequently filed on August 15, 2014. Ms. Clark-Thigpen testified that she did not see the proof of claim until after it had been filed and that she did not remember signing anything giving Ms. Schmidt authorization to act on her behalf (Transcript 3/4/15, pg. 75, ln. 11–pg. 76, ln. 2).

After the chapter 7 trustee filed his objection to the two proofs of claim, Ms. Clark-Thigpen testified that she had another discussion with Ms. Schmidt about the upcoming hearing. During this discussion, Ms. Schmidt advised Ms. Clark-Thigpen that she should not hire a separate attorney and that she [Schmidt] would handle the hearing on the claim objection (Transcript 3/4/15, pg. 67, ln. 20–pg. 68, ln. 5). Ms. Clark-Thigpen further testified that Ms. Schmidt told her that she had prepared an "opening statement" for the claim objection hearing (Transcript 3/4/15, pg. 92, ln. 7-11). Ms. Clark-Thigpen testified that she believes she "lost" her priority claim status because Ms. Schmidt failed to attend the hearing (Transcript 3/4/15, pg. 90, ln. 10–15).

**Ms. Alisha Pate**

Ms. Pate also testified that she first learned of Mr. Clark's bankruptcy case on August 4, 2014 in a text from Chasity Clark[3] (Transcript 3/4/15, pg. 98, ln. 6-19). Upon learning of the bankruptcy, Ms. Pate testified that she physically went to IHFS's offices to advise them of Mr. Clark's bankruptcy (Transcript 3/4/15, pg. 101, ln. 15–pg. 102, ln. 2). On August 5, 2014, Ms. Pate received a call from Ms. Schmidt (Transcript 3/4/15, pg. 102, ln. 25–pg. 103, ln. 2). Ms. Pate testified that Ms. Schmidt told her the following during the call:

---

[3] Chasity Clark is also the mother of one of Mr. Clark's children. Ms. Clark's claim was the subject of the Court's decision in *In re Clark*, 2014 WL 5100111.

> Don't worry, I'm going to handle everything.  I'm going to get the papers.  I'm going to speak with Mrs. Warner [the trustee's assistant].  I'm going to get everything handled.  The only thing you have to do is just relax and I'm going to handle everything on your behalf.

(comment added) (Transcript 3/4/15, pg. 103, ln. 4–8).   Ms. Pate further testified that Ms. Schmidt told her that she would file a proof of claim on her behalf (Transcript 3/4/15, pg. 103, ln. 11–18).  When Ms. Pate expressed concern that she needed an attorney, Ms. Pate testified Ms. Schmidt told her that "[y]ou don't need an attorney.  I'm going to handle everything.  Don't worry, everything is going to be done.  I'm going to do all the filing for you."  (Transcript 3/4/15, pg. 104, ln. 18-22).

## Ms. Christine Schmidt

Prior to Ms. Schmidt being sworn and in light of the testimony of Ms. Pate and Ms. Clark-Thigpen, the Court provided Ms. Schmidt an opportunity to speak with counsel and the appropriate representatives of IHFS regarding her right against self-incrimination (Transcript 3/4/15, pg. 127, ln. 14-pg. 128, ln. 19).  After a break in the proceedings, Ms. Schmidt was sworn and specifically waived her rights against self-incrimination under the Fifth Amendment to the Constitution (Transcript 3/4/15, pg. 131, ln. 5-pg. 128, ln. 19).

Ms. Schmidt testified that she is a "Public Service Administrator" for the Illinois Department of Healthcare and Family Services where she has worked for 23 years (Transcript 3/4/15, pg. 132, ln. 15-18).  Ms. Schmidt's job duties include "work[ing] the cases up for Bankruptcy Courts" and "personally fil[ing] proof of claims in Bankruptcy Courts for the State of Illinois."  (Transcript 3/4/15, pg. 132, ln. 20-25).  Ms. Schmidt testified that she does not hold a law degree and is not licensed to practice law in any state. (Transcript 3/4/15, pg. 131, ln. 1-4).

Ms. Schmidt testified that pursuant to IHFS policy, her office does not file proofs of claim in chapter 7 cases nor does it notify custodial parents about pending cases for which it receives notices. (Transcript 3/4/15, pg. 133, ln. 7-23).  It is undisputed that IHFS learned about the existence of this bankruptcy case no later than March 29, 2012 [Exhibit 1, pg. 13].  Each notice that IHFS received was logged into IHFS's computer system.  Ms. Schmidt acknowledged that IHFS took no action nor did it convey any information to Ms. Clark-Thigpen or Ms. Pate. (Transcript 3/4/15, pg. 135, ln. 5-pg. 139, ln. 9).

Despite IHFS's stated policy, Ms. Schmidt testified that she filed proofs of claim in Mr. Clark's bankruptcy case. [*See* Exhibits 24 and 25].  Each proof of claim lists IHFS as the creditor.  [Exhibits 24 and 25].  Ms. Schmidt signed each proof of claim as the agent for the creditor. [Exhibits 24 and 25].  When questioned by the Court, Ms. Schmidt acknowledged that the creditors are actually the custodial parents (Ms. Clark-Thigpen and Ms. Pate). (Transcript 3/4/15, pg. 140, ln. 8-10).  Ms. Schmidt subsequently acknowledged that she had filed false claims and could not identify any authority for her actions. (Transcript 3/4/15, pg. 141, ln. 1-pg. 143, ln. 18).

After hearing Ms. Schmidt's testimony, the Court again stopped the proceeding to allow Ms. Schmidt the opportunity to consult with counsel. (Transcript 3/4/15, pg. 144, ln. 3-pg. 148, ln. 21). The Court continued the hearing to April 30, 2015. [Docket No. 176].

On April, 28, 2015, a "Statement of the Illinois Department of Healthcare and Family Services, Division of Child Support Services" (the "Statement") was filed. [Docket Nos. 194 and 195]. In the Statement, IHFS asserted that (i) it was a creditor entitled to file a proof of claim; and (ii) Ms. Schmidt did not intentionally mislead or misrepresent to Ms. Clark-Thigpen, Ms. Pate or this Court that she was an attorney. [Docket No. 195].

On April 30, 2015, the Court convened the continued hearing. Ms. Schmidt gave further testimony regarding her interactions with Ms. Clark-Thigpen, Ms. Pate and the Court. Ms. Schmidt testified that she appeared on behalf of Ms. Pate and Ms. Clark-Thigpen before this Court by telephone and that she did not inform the Court that she was not a licensed attorney.[4] Many of her statements conflicted with her prior testimony and with the Statement filed by IHFS. At best, the testimony reflects that Ms. Schmidt lacks competence in her job. At worst, Ms. Schmidt has violated her oath. The Court finds that Ms. Schmidt lacks credibility and that her testimony should be afforded minimal weight.

Based on the evidence received and applicable law, the Court makes the following findings of fact and conclusions of law.

<u>Analysis</u>

The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). The Court has constitutional authority to enter a final order in this contested matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

---

[4]   The practice of law in Texas is restricted to members of the state bar, with limited exceptions permitted by the Texas Supreme Court. TEX. GOV'T CODE ANN. § 81.102 (West 2004); *see also In re Nolo Press/Folk Law, Inc.,* 991 S.W.2d 768, 770 (Tex. 1999). The practice of law means "the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined. [] The definition in this section is not exclusive and does not deprive the judicial branch of the power and authority under both this chapter and the adjudicated cases to determine whether other services and acts not enumerated may constitute the practice of law." TEX. GOV'T CODE ANN. § 81.101 (West 2004). "[T]he Court has the duty and the inherent power to determine in each case what constitutes the practice of the law, and to inhibit persons from engaging in the practice of law without having obtained a license to do so." *Unauthorized Practice Comm., State Bar of Texas v. Cortez,* 692 S.W.2d 47, 51 (Tex. 1985) (quoting *Grievance Comm. State Bar v. Coryell*, 190 S.W.2d 130, 131 (Tex. Civ. App.— Austin 1945, writ ref'd w.o.m)). In addition, Texas law provides that the unauthorized practice of law is a Class A misdemeanor or, for multiple convictions, a third degree felony. TEX. PENAL CODE ANN. § 38.123 (West 2011). Based on the evidence presented, there is ample support for the conclusion that Ms. Schmidt engaged in the unauthorized practice of law. The Court declines, however, to make a specific finding regarding Ms. Schmidt's conduct as it is not germane to the Court's decision in this matter.

The deadline for filing a proof of claim in a chapter 7 case is governed by Bankruptcy Rule 3002.  Rule 3002(c) provides that

> [i]n a chapter 7 liquidation . . ., a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called for under § 341(a) of the Code except as follows:
>
> . . .
>
> (5)  If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

FED. R. BANKR. P. 3002(c).  The trustee's notice filed at Docket No. 55 satisfies the requirements of Bankruptcy Rule 3002(c).

Distribution of property in a chapter 7 case is governed by 11 U.S.C. § 726.  Prior to 1994, some courts held that when a creditor that failed to receive notice of the bar date filed a priority claim after the bar date, the claim was entitled to payment along with all timely-filed priority claims.  *See United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir. 1990). Other courts went further and held that tardily-filed priority claims must be paid alongside timely-filed priority claims regardless of notice.  *In re Vecchio*, 20 F.3d 555 (2d Cir. 1994); *Cooper v. Internal Revenue*, 167 F.3d 857 (4th Cir. 1999); *In re Davis*, 81 F.3d 134 (11th Cir. 1996); *In re Pac. Atl. Trading Co.*, 33 F.3d 1064 (9th Cir. 1994).  The rationale for this line of authority was that § 726(a)(1) made no distinction between priority claims that were timely-filed and those that were not.

On October 22, 1994, § 726(a)(1) was amended as follows:

> (a)  Except as provided in section 510 of this title, property of the estate shall be distributed—
>
> > (1)  first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title*, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section*;

BANKRUPTCY REFORM ACT OF 1994, Pub. L. No. 103–394, 108 Stat. 4106 (emphasis added). The effect of the change was to identify the date on which a tardily-filed priority claim was no longer entitled to treatment with other timely-filed priority claims.  The date that a chapter 7 trustee commences distribution under § 726 is the date on which the trustee's final report is approved.  *In re Van Gerpen*, 267 F.3d 453, 457 (5th Cir. 2001).

Effective October 17, 2005, Congress further amended § 726(a)(1) by adding an alternative deadline:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

    (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed *on or* before *the earlier of—*

        *(A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or*

        *(B)* the date on which the trustee commences *final* distribution under this section;

THE BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005, Pub. L. No. 109-8, 119 Stat. 23 (emphasis added).  The chapter 7 trustee filed his "Summary of the Trustee's Final Report" (the "Summary") on July 17, 2014 [Docket No. 110].  The Summary was mailed to all known creditors on the official service list (including IHFS) on July 19, 2014 [Docket No. 112].  The tenth day after the mailing of the Summary was July 29, 2014.  IHFS filed proofs of claim for Ms. Clark-Thigpen and Ms. Pate on August 15, 2014.

    Ms. Pate and Ms. Clark-Thigpen do not dispute that a deadline existed or that their proofs of claim were filed after the deadline.  Instead, Ms. Pate and Ms. Clark-Thigpen assert that the 10-day deadline for tardy priority claims under § 726(a)(1) could not have triggered because the Summary was not mailed to them. In connection with this argument, Ms. Pate and Ms. Clark-Thigpen assert that mailing a copy of the Summary to IHFS was ineffective service, citing the following Illinois law:

    An attorney who provides representation pursuant to this Section shall represent the Illinois Department exclusively.  Regardless of the designation of the plaintiff in an action brought pursuant to this Section, an attorney-client relationship does not exist for purposes of that action between that attorney and (i) an applicant for or recipient of child support enforcement services or (ii) any other party to the action other than the Illinois Department. Nothing in this Section shall be construed to modify any power or duty (including a duty to maintain confidentiality) of the Child and Spouse Support Unit or the Illinois Department otherwise provided by law.

305 ILL. COMP. STAT. ANN. 5/10-3.1 (West 2008).  This Court finds the reference to this section unpersuasive as it pertains to the issue of whether an attorney-client relationship is created when an attorney for the State of Illinois initiates an action seeking the enforcement of a child support order.  In this case, no attorney from the State of Illinois has appeared before the Court and the question of whether an attorney-client relationship exists is not at issue.

    The Court finds the relevant issue to be one of agency.  The proofs of claim on which Ms. Clark-Thigpen and Ms. Pate rely (and which they have explicitly adopted) were filed by IHFS.

The filings made at Claims Docket Nos. 14-1 and 15-1 specifically state that the proofs of claim filed by IHFS were filed at their respective insistence with the requisite authority.  IHFS received the Summary.  It stretches the bounds of credibility to rely on a proof of claim filed by an authorized agent then seek to disavow any notice provided to that agent related to the scope of that agency at the proper address.

Second, and more important, the deadlines set forth in § 726(a)(1) are not founded in due process.  Rather, the dates are discrete moments in time meant to further the administration of chapter 7 cases by establishing a definite deadline for the determination of the priority of distributions.  The Court finds telling the use of the word "mailing" in § 726 versus the term "service" used elsewhere throughout the Bankruptcy Code and Rules.  Actual notice is irrelevant to the triggering of the deadline.  This conclusion is further supported by the very structure of § 726.  The effect of missing the deadline contained in § 726(a)(1) is not the forfeiture of one's claim.  To the contrary, the distribution scheme of § 726(a) contemplates late claims and provides that distributions in a chapter 7 case after the application of § 726(a)(1) will be made as follows:

> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is--
>
> > (A) timely filed under section 501(a) of this title;
> >
> > (B) timely filed under section 501(b) or 501(c) of this title; or
> >
> > (C) tardily filed under section 501(a) of this title, if--
> >
> > > (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
> > >
> > > (ii) proof of such claim is filed in time to permit payment of such claim;
>
> (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

. . . .

11 U.S.C. § 726(a).  Section 726(a) provides for untimely claims held both by creditors that received notice of the bankruptcy as well as those that received no notice at all.  *See In re Waindel*, 65 F.3d 1307, 1309 (5th Cir. 1995).  A priority claim is nothing more than a subset of unsecured claims.  *See* 11 U.S.C. § 507 (using the term "unsecured" to describe the various categories of priority claims); *Waindel*, 65 F.3d at 1311.  The straightforward application of § 726 dictates that Ms. Pate's and Ms. Clark-Thigpen's proofs of claim should be allowed as tardily-filed claims entitled to distribution under 11 U.S.C. § 726(a)(2) or 726(a)(3).  *See Waindel*, 65 F.3d 1307; *In re Crawford*, 135 B.R. 128 (D. Kan. 1991).

Accepting Ms. Pate's and Ms. Clark-Thigpen's testimony at face value, the Court finds that notice of Mr. Clark's bankruptcy filing was withheld from them by IHFS despite the trustee's attempts to provide notice to all creditors.  The Court finds it unsettling that IHFS provided no indication to the Court or to the trustee that it would not forward critical information related to Mr. Clark's bankruptcy case to the citizens that it was created to serve.  It is equally unsettling to the Court that Ms. Schmidt would so easily ignore IHFS policy without explanation and incompetently file and prosecute proofs of claim on behalf of mothers.  Had the Court been aware of this practice at the prior hearing, the Court would have allowed the claims under § 726(a)(2) and not § 726(a)(3).  In that regard, the Court will vacate its prior decision and allow Ms. Pate's and Ms. Clark-Thigpen's proofs of claim as tardily-file unsecured claims entitled to distribution under 11 U.S.C. § 726(a)(2).

The Court is satisfied that its decision appropriately harmonizes Bankruptcy Rule 3002, § 726 and the fundamental policies underlying chapter 7 of the Bankruptcy Code.  Section 726 provides a distribution scheme that bars no creditor from the opportunity to participate in the distribution of the estate's assets regardless of their tardiness while at the same time rewarding those creditors that timely follow the law.  While not perfect, the Court finds solace in the knowledge that the claims asserted by Ms. Pate and Ms. Clark-Thigpen are non-dischargeable under 11 U.S.C. § 523(a)(5).  Ms. Pate and Ms. Clark-Thigpen are free to pursue satisfaction of their claims against Mr. Clark in accordance with applicable state law.

In its September 24, 2014 Order, the Court held that Ms. Pate's and Ms. Clark-Thigpen's proofs of claim would be allowed as tardily-filed claims entitled to distribution under 11 U.S.C. § 726(a)(3).   Due to the conduct of IHFS and Ms. Schmidt, neither Ms. Pate nor Ms. Clark-Thigpen had notice or actual knowledge of Mr. Clark's bankruptcy case.   Accordingly, the Court's prior decision was wrong.  The Court will grant the motion to reconsider and allow the proofs of claim filed by Ms. Pate and Ms. Clark-Thigpen as tardily-filed  claims in the amount claimed and entitled to distribution under 11 U.S.C. § 726(a)(2).  All other relief is denied. An order consistent with this opinion shall issue.

**SIGNED: June 12, 2015.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**